[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 07-10667
_____

D. C. Docket No. 88-01170-CV-D-N-2

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 27, 2008
THOMAS K. KAHN
CLERK

R.C.,
by his next friend the Alabama Disabilities Advocacy Project,
and on behalf of those similarly situated,

Plaintiff-Appellant,

versus

PAGE WALLEY,
Commissioner of the Alabama Department of Human Resources,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(March 27, 2008)

Before TJOFLAT, ANDERSON and HILL, Circuit Judges.

PER CURIAM:

This appeal arises from the termination of a consent decree in a class action institutional reform case brought in the late 1980s on behalf of a class of children in Alabama's child welfare system ("the Class"). The consent decree at issue was entered into between the Class and the Alabama Department of Human Resources ("DHR") in 1991, and later revised in 1999. In 2004, the State sought termination of the decree but was unsuccessful. In January of 2007, the district court, after a lengthy discovery period but without holding an evidentiary hearing, granted DHR's renewed motion for termination. The Class now appeals (1) the court's failure to grant the Class an evidentiary hearing prior to termination and (2) the court's termination of the consent decree. We find no abuse of discretion in the district court's rulings below.

The parties are familiar with the facts, and this case has also been the subject of two recent published district court opinions, see R.C. v. Walley, 475 F. Supp. 2d 1118 (M.D. Ala. 2007) [hereinafter R.C. II], and R.C. v. Walley, 390 F. Supp. 2d 1030 (M.D. Ala. 2005). The Middle District of Alabama has nurtured this institutional reform case for the better part of two decades, first under Judge Hobbs and since the mid-nineties under Judge DeMent. The significant improvement of Alabama's child welfare system over the last twenty years is as much a testament to the exemplary judicial oversight of these judges as it is to the collaborative efforts

2

of the parties.

Besides challenging the termination of the consent decree, the Class's central argument on appeal is that the district court should have permitted the Class an evidentiary hearing prior to ordering termination of the decree. We review the district court's denial of the evidentiary hearing for abuse of discretion. Loyd v. Ala. Dep't of Corrs., 176 F.3d 1336, 1339 (11th Cir. 1999). This Court does not require a court to order an evidentiary hearing when there is sufficient evidence before the court to render a just and equitable determination on the written record. See, e.g., FDIC v. Morley, 915 F.2d 1517, 1522 (11th Cir. 1990) ("Parties entitled to such process cannot, however choose the precise process they desire. . . . Procedures providing less than a full evidentiary hearing have often satisfied due process."); United States v. Diaz, 811 F.2d 1412, 1414 (11th Cir. 1987) (finding no abuse of discretion when the court denied an evidentiary hearing in bond remission case because "judge ha[d] all the necessary facts to make a just and equitable determination of the case").[1]

---

[1] The Class argues that under Loyd v. Ala. Dep't of Corrs., 176 F.3d 1336 (11th Cir. 1999), and Cason v. Seckinger, 231 F.3d 777 (11th Cir. 2000), the district court had an obligation to conduct an evidentiary hearing. Both of these cases were decided under the Prison Litigation Reform Act, see 18 U.S.C. § 3626(b)(2)-(3) (2006). Both are factually and legally distinguishable and do not hold, as Appellants assert, that a district court must order an evidentiary hearing prior to the termination of any consent decree. In Loyd, the only evidence upon which the district court relied to make its determination was that submitted by the court monitor. Loyd, 176 F.3d at 1342 (noting that court monitor had submitted eleven reports to the

3

The State filed its second motion to terminate the consent decree in August of 2005, to which the plaintiffs responded with a brief and evidentiary support. The court formally reopened discovery following the motion to terminate, during which time the defendants produced more than 50,000 documents, the plaintiffs took three depositions,[2] and there were two court monitor reports submitted to the court. Further, the consent decree itself required that the Class have access to any and all data and records it might need to represent the Class in the litigation. The district court had conferred with the parties, permitted introduction of evidence, and issued a published opinion on the very same issues that were before the court in the State's second motion to terminate. This case does not present a situation where the plaintiff was denied, in any real sense, a meaningful opportunity to introduce evidence before the court or to be heard. The district court's exhaustive, detailed, and thorough opinion emphasizes that it reached the decision to terminate after a review of <u>all</u> evidence submitted to it for consideration.

Moreover, on May 8, 2006, after the introduction of the foregoing evidence,

---

court but not mentioning any evidence submitted by plaintiff who opposed termination). In <u>Cason</u>, in an even more problematic situation, the lower court "refused to accept" evidence proffered by the class to demonstrate ongoing violations of federal law. <u>Cason</u>, 231 F.3d at 782. Here, the court accepted and considered all the evidence before it, including extensive proffers by the Class itself.

[2]     The Class could have sought leave to depose additional individuals but failed to make such a request to the district court.

4

the district court ordered that the Class, if desired, may file a brief on or before May 18, 2006, that the State may file a reply thereto on or before May 25, 2006, after which the district court would take the matter under consideration, and further argument and evidence would not be permitted. In that May 8, 2006, order, the court expressly indicated that its ruling on the motion to terminate would not require a status conference or oral presentation. The class did file a brief on May 18, 2006, and did make a further evidentiary submission. However, although it was clear that the district court intended to resolve the matter without an evidentiary hearing,[3] the Class failed to object thereto, failed to otherwise object to the procedures employed by the district court, and failed to seek further depositions or opportunities to adduce evidence before the district court ruled.[4] Finally, at oral argument before this court, counsel was unable to point to any particular evidence or argument that the Class was denied an opportunity to present to the district court

[3]     In Docket number 828, the Class expressly acknowledged its understanding of the district court's May 8, 2006, order as stating that "there will be no status conference or evidentiary hearing on this matter." Nevertheless, the Class interposed no objection.

[4]     In its reply brief to, and at oral argument before, this Court, the Class asserted that its May 18, 2006, brief did generally refer to and incorporate its prior briefing, which, the Class asserts, did request an evidentiary hearing. Our review of that May 18, 2006, brief reveals that it did make a general reference to and incorporation of a previous brief in November, 2005 (Docket 781). We note, however, that Docket 781 did not request an evidentiary hearing. In any event, in light of the district court's express indication of an intent to rule without an evidentiary hearing, we readily conclude that the Class failed to fairly apprise the district court of any objection to the district court's intention of ruling without an evidentiary hearing.

in the seventeen months between the determination motion and the court's ruling.

Because the Class was given ample and multiple opportunities to present evidence and make arguments to the court, had the right to conduct extensive investigations and discovery under the court's order and by the terms of the consent decree, had notice of the court's intent to rule without a hearing but failed to raise a specific objection to this procedure, and fails now to point clearly to material factual disputes in the record that could have made a hearing valuable,[5] we find no abuse of discretion in the court's rendering its decision on the extensive paper record before it, especially in light of the court's longstanding relationship with the parties and this case.

We also review the decision to terminate a consent decree for abuse of discretion. Johnson v. Florida, 348 F.3d 1334, 1341 (11th Cir. 2003). In Judge DeMent's meticulous 148-page order, he exhaustively reviewed factors counseling for and against termination and ultimately decided that after eighteen years of supervision, the Alabama child welfare system had undergone radical changes and was on secure footing to continue its progress in the years to come, without court

---

[5] The district court observed that throughout the litigation, "the facts and data rarely have been in dispute, as the issues largely have focused on whether those facts and data legally are sufficient to fulfill Defendant's burden under the Consent Decree." R.C. II, 475 F. Supp. 2d at 1129 n.11.

supervision. The system is not yet perfect and may never be, but its improvement has been tremendous. Although it is true, as the Class notes on appeal, that the court recognized some present deficiencies in the system, these deficiencies alone do not require continuation of the consent decree. The district court was within the bounds of its discretion to terminate the decree, having made extensive findings and employing the proper legal framework to analyze the termination requirements. Furthermore, the district court was in the unique position to rely on its personal experience with the parties and its knowledge of this case to emphasize the State's history of good faith and its present commitment to remedying remaining problems as mitigating factors when assessing substantial compliance and sustainability thereof. See Rufo v. Inmates of the Suffolk County Jail, 502 U.S. 367, 394, 112 S. Ct. 748, 765 (1992) (O'Connor, J., concurring in the judgment) ("Our deference to the District Court's exercise of its discretion is heightened where, as in this litigation, the District Court has effectively been overseeing a large public institution over a long period of time."). We accordingly discern no abuse of discretion in the district court's decision to terminate the consent decree.

We are mindful that "[f]ederal courts should not be in the business of running important functions of state government for decades at a time." Reynolds v. McInnes, 338 F.3d 1201, 1219 (11th Cir. 2003). It is, as the district court

7

concluded, time for the federal court to step aside and allow the State to continue its efforts to care for the Alabama children in its protection.  We commend the Class, the State of Alabama and the district court on the highly successful execution of this consent decree.

AFFIRMED.